UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ARDIC CAINE FIELDS                    CIVIL ACTION NO. 12-cv-1839

VERSUS                                JUDGE WALTER

BURL CAIN                             MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted Ardic Field ("Petitioner") of attempted second degree murder after he stabbed his former girlfriend more than 50 times.  He was adjudicated a third-felony habitual offender and sentenced to 100 years imprisonment.  His conviction and sentence were affirmed on direct appeal.  State v. Fields, 973 So.2d 973 (La. App. 2d Cir. 2008), writ denied, 992 So.2d 983 (La.).  He also filed a post-conviction application in the state courts.  Petitioner now seeks federal habeas corpus relief on a number of issues.  For the reasons that follow, it is recommended his petition be denied.

### Background Facts

The State filed an eight-volume record of more than 2,300 pages of the state court record.  The submission contains numerous motions, writ applications, and transcripts of hearings, but it appears not to include a transcript of the actual trial.  Fortunately, none of Petitioner's issues relate directly to the sufficiency or other aspects of the evidence presented at trial.  The State may wish, however, to supplement the record with  the transcript of the

trial or, if it has been overlooked in the record, direct the court to it by page reference.

The state appellate court's opinion contains a brief recitation of the trial evidence, and neither party has specifically contested its accuracy.  It indicates that Petitioner dated the victim from 1998 until 2000, when the victim ended the relationship.  Petitioner was angered by the breakup and wanted to resume the relationship.  About six months after the breakup, Petitioner made an uninvited entry into the home of the victim, who was with her 14-year-old son.

Petitioner was angry and agitated, and after some conversation, he pulled a knife and stabbed the victim more than 50 times.  The victim's son was able to escape the residence and call police.  Petitioner fled in the victim's vehicle, which was later recovered in Texas. Petitioner was returned to Louisiana for trial after he served a Texas sentence for a drug offense.

Petitioner was charged with attempted first-degree murder.  He at one time entered a plea of not guilty by reason of insanity, which led to a sanity commission that initially found Petitioner incompetent to proceed.  Two years later, the trial court ruled that Petitioner was competent to proceed and, after examination by a second sanity commission and a related hearing, the court ruled that Petitioner was competent for trial and had been competent at the time of the crime.  Petitioner was found guilty as charged.

**Denial of Motion to Quash**

Petitioner's counsel filed a pretrial motion to quash that argued the State had not timely prosecuted the case under La. C. Cr. P. art. 578(2) because more than two years had

elapsed since the commencement of proceedings. Tr. 797-98.  The trial judge held a hearing and heard lengthy argument about what events triggered or interrupted the allowed time within the meaning of Louisiana law.  The court eventually denied the motion.  Tr. 801-48. Counsel filed a writ application (Tr. 959.1-.5), which the appellate court denied on the grounds that a number of defense motions for continuance extended the allowed time period. Tr. 961.  Petitioner then filed a pro se writ application to the Supreme Court of Louisiana (Tr. 984-94), which the Supreme Court denied without comment.  Tr. 1021.  Petitioner raised the issue again on direct appeal in a pro se brief.  The appellate court found that its earlier ruling was supported by the record.  State v. Fields, 973 So.2d at 978-79.

Petitioner argues that this court should grant habeas relief because the trial court abused its discretion when it denied the motion to quash.  He argues that the court improperly interpreted the facts in the record that were applied to Article 578(2).  The State responded that Petitioner did not assert a federal basis for the claim, which would be fatal because the habeas statute provides that this court may issue a writ to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).  The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law."  Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011). Habeas relief is not available even if Petitioner is correct on his state law argument.

In reply, Petitioner attempts to characterize his timeliness claim as one under federal law.  He argues that the denial of his motion to quash was a violation of the federal Due

Process Clause, and he contends that his multiple filings in state court were filled with references to his rights under the Fifth, Sixth, and Fourteenth Amendments.

Petitioner may not recast his state law claim as a federal due process claim in this court and present it for the first time.  To seek habeas relief on such a due process claim, he was first required to fairly present a federal due process claim to the state court and allow it the first opportunity to address the claim during the exhaustion process.  Scott v. Hubert, 635 F.3d 659, 667 (5th Cir 2011), citing Baldwin v. Reese, 124 S.Ct. 1347 (2004) (claim in state court petition for ineffective assistance of appellate counsel not exhausted because not identified as federal in nature).  The determination of whether the claim was presented in such a fashion is made by looking to the briefs filed in state court.  Smith v. Digmon, 98 S.Ct. 597 (1978); Soffar v. Dretke, 368 F.3d 441, 467 (5th Cir. 2004).

A review of the motion to quash, the extensive oral argument, and the writ applications associated with this issue do not reveal any fairly presented federal due process claim related to the timing of the prosecution.  Petitioner may have invoked federal law with respect to other claims, but all of his briefs and argument on this claim were confined to contentions that the timing of the prosecution violated state procedural law.  Federal habeas relief is not available on this claim.

**Ineffective Assistance of Counsel**

### A.  Relevant Facts

Petitioner was appointed as many as eight or nine attorneys over the course of his case.  All but one, Frank Zaccaria, were relieved of their appointments due to health

Page 4 of  14

problems, conflicts, association with the victim, or other reasons.  Mr. Zaccaria filed a motion to withdraw in October 2003 and represented that he had a "personal conflict" with Petitioner, who had accused him of conspiring to and falsifying court exhibits and transcripts. Zaccaria also represented that Petitioner had affected Zaccaria's representation of other incarcerated clients, and Petitioner had threatened counsel.  The court denied the motion.  Tr. 957-59.  Petitioner filed his own motion in November 2003 and asked the court to appoint new counsel because Zaccaria lied to him, refused to do any investigation, and there had been a breakdown in communication.  Tr. 966.  Petitioner filed a similar motion in July 2006 and represented that counsel had not visited or engaged in any written or telephone communication with him since 2003.  Tr. 1697.

Judge Ramona Emanuel held a hearing in November 2003 and addressed some of the issues.  She stated that Mr. Zaccaria was "an excellent attorney, very competent, and able to represent you," but she was concerned about what she perceived as dilatory tactics by Petitioner in not cooperating with his counsel.  Petitioner complained that Zaccaria refused to hire an investigator and would not return phone calls from potential witnesses who Petitioner asked to contact Zaccaria.  Tr. 1704-22.

Judge Roy Brun held a hearing in August 2006, shortly before trial, and specifically addressed a motion to remove Zaccaria as counsel.  Petitioner repeated his complaints that counsel had not communicated with him since 2003, refused to subpoena witnesses, and otherwise did not prepare for trial.  Petitioner conceded that Zaccaria had called him the previous day to prepare for trial.  Mr. Zaccaria, after being sworn, spoke to the issues

regarding his representation.  He stated that one of Petitioner's original attorneys did hire an investigator, Zaccaria had his report.  He said his efforts to obtain additional funds for investigation were denied for lack of specificity.  Counsel said that he had provided his client with HIPAA requests so that counsel could request psychological treatment records, but Petitioner asked to review the documents then never executed and returned them to counsel. Zaccaria said he issued subpoenas for medical records out of Texas facilities, but they were ignored.

Zaccaria said that he went to see Petitioner in jail, and Petitioner said he was "going to get me, he was going to sue me, or do whatever it took."  Zaccaria said he "took that as a physical threat as well as a legal threat" and filed his motion to withdraw.

Zaccaria said that he filed bankruptcy in 2004 and listed Petitioner as a creditor because of the threatened lawsuit.  His bankruptcy attorney advised him not to discuss anything with Petitioner because it could renew his liability from that point forward. Zaccaria, after the bankruptcy filing, filed a motion to be relieved as counsel, but it was denied.  He said he did not talk to any of the potential witnesses after that because he was afraid of exposure on the bankruptcy issue as well as the threats that had been made against him.  He said, however, that he eventually "realized it didn't matter, I was going to do my best on the case and try it."

Mr. Zaccaria said he did receive a letter from Petitioner's sister with a list of witnesses, but he told her he did not like to subpoena witnesses blindly to trial.  He said he had lost cases by doing that in the past when he was surprised, so he asked the sister to have

the witnesses contact him about their potential testimony.  Zaccaria asked for more time to obtain medical records out of "an abundance of caution" before trial.  He blamed the delay in requesting the records on the lack of signed HIPAA waiver, which he took to indicate Petitioner believed the records were immaterial.  He said two of Petitioner's former counselors were no longer in the area, and another counselor was dying of cancer and unable to remember much.  He said none of the witnesses identified by Petitioner had been alibi witnesses.  It appears they all related to Petitioner's mental health.  Zaccaria said he was prepared to try the case and had "worked out a defense in my mind and on paper."

Petitioner disagreed with much of what Mr. Zaccaria said.  For example, he claimed that he signed the HIPAA release forms on the same date they were given to him.  He complained that counsel could have perhaps located witnesses if he had attempted to find them three years earlier when Petitioner identified them.  Judge Brun denied the motion to appoint new counsel, noting Mr. Zaccaria's experience and competence.  He said his take on the issue was that "the problems in communication have been caused by the defendant, not by Mr. Zaccaria."  He noted that Zaccaria had to go so far as to seek appointment of a psychiatrist to evaluate Petitioner because of Petitioner's refusal to communicate with counsel.  The judge also issued instanter subpoenas for two healthcare providers.  Tr. 1724-62.

The case proceeded to trial, and Petitioner was convicted.  His post-conviction application included a claim of ineffective assistance of counsel.  The State responded with an affidavit from Mr. Zaccaria.  He testified that Petitioner's attitude toward him was

threatening and abusive.  Despite that, and after his motion to withdraw was denied, he continued his representation to the best of his ability.  He said his request for medical records did not pan out because the agencies did not keep records after five years.  As for witnesses, he said he told Petitioner to have the witnesses contact him.  Some did, but none made appointments and came in to talk to Zaccaria.  There were no potential alibi or fact witnesses to excuse the crime; there were only witnesses who would purportedly say that Petitioner was depressed before the incident.  Tr. 1797-98.

### B.  State Court Decisions

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Judge Ramona Emanuel applied that standard when assessing the post-conviction claim.  She set forth the relevant law, referred to the affidavit from Mr. Zaccaria, and determined (without much explanation) that Petitioner "failed to meet his burden of proof utilizing the Strickland test." Tr. 1954-56.  The state appellate court issued a brief writ denial, the gist of which was: "After review of the application and the district court's ruling thereon, we detect no error in the district court's findings of fact and conclusions of law."  Tr. 2150.  The Supreme Court of Louisiana denied writs without comment.  Tr. 2303.

### C.  Section 2254(d) Standard

Petitioner's claim was  adjudicated  and  denied  on  the merits by the state court, so

28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1939 ( 2007).  The <u>Strickland</u> standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential." <u>Knowles v. Mirzayance</u>,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. <u>Id</u>.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>.

Review of a <u>Strickland</u> claim under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  It is reversible error for a federal district court to hold a federal hearing to flesh out such a claim. <u>Pape v. Thaler</u>, 645 F.3d 281, 288 (5th Cir. 2011).

**D.  Analysis**

Much of Petitioner's argument is that his counsel had an "actual conflict of interest" because he listed Petitioner as a creditor in his Chapter 7 bankruptcy proceeding.  Petitioner invokes the actual conflict language in an effort to obtain review under the lower threshold of <u>Cuyler v. Sullivan</u>, 100 S.Ct. 1708 (1980), under which prejudice is presumed if the

defendant shows that an actual conflict of interest adversely affected his lawyer's performance.  This is a less demanding standard than the Strickland test used for most ineffective assistance claims.  The Fifth Circuit has held, however, that Cuyler is solely concerned with conflicts that arise from the representation of multiple clients.  "Strickland offers a superior framework for addressing attorney conflicts outside the multiple or serial client context."  Beets v. Scott, 65 F.3d 1258, 1265 (5th Cir. 1995)(en banc).

It appears that Mr. Zaccaria listed Petitioner as a creditor in his bankruptcy out of an abundance of caution based on Petitioner's alleged threat to sue him.  This did lead to a chilling of communication between the two, but the record reflects that Zaccaria overcame his reluctance to communicate with Petitioner and moved forward in preparing for trial.  The fact of the bankruptcy itself would not have undermined counsel's efforts in support of the defense.  If anything, counsel would have wanted to obtain a good result in the criminal case and avoid any potential for civil liability.  There was undeniably a strain on the relationship, to which both parties apparently contributed.  It is only relevant, however, if it resulted in counsel performing inadequately under Strickland and causing prejudice to the defense.

Petitioner argues that counsel should have investigated better and petitioned the court for an independent expert, reviewed and argued Petitioner's mental health history, and attempted to undermine the element of specific intent by proving insanity.  The state courts, as discussed above, considered all of the relevant arguments and found that Petitioner did not establish that Mr. Zaccaria's performance was so deficient as to be less than the counsel required by the Sixth Amendment.  Petitioner does point to several avenues of investigation

and interviews that counsel could and perhaps should have pursued, but he has not presented any basis for determining that there is a reasonable likelihood the outcome of the trial would have been different had counsel done so.  Petitioner has not pointed to any medical records, statements from physicians, or even statements from lay witnesses who might have supported an insanity/specific-intent defense at trial and made a difference.  Complaints of uncalled witnesses are not favored because of their speculative nature.  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000).  In addition, for Petitioner to demonstrate the requisite Strickland prejudice, "[he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial."  Id.  Petitioner has not made any such showing.

Petitioner has demonstrated that counsel was slow to move in his preparation of this case, and it might be that he would have discovered some additional medical records or witnesses had he acted more promptly, but that is merely speculation.  Petitioner presented to the state courts the same arguments he presents here, and those courts denied his claim on the merits under the Strickland standard.  Congress has directed the federal courts to apply a very deferential standard when examining such claims in habeas cases.  Given that deferential standard, the undersigned must recommend that this claim be denied.

**Denial of Motion to Appoint New Counsel**

Petitioner made a related argument in his post-conviction application that the trial court abused its discretion by refusing to appoint substitute counsel.  Judge Emanuel cited the hearing held by Judge Brun and the reasons given at that hearing.  She also found that

Mr. Zaccaria represented Petitioner in an impartial manner.  The claim was denied.  Tr. 1956. The state appellate and Supreme Courts summarily denied writ applications.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Pape, 645 F.3rd at 287. A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable.  Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

Petitioner has not cited any clearly established Supreme Court authority that would have required the trial court to appoint new counsel in this case.  Judge Brun engaged in a lengthy discussion with counsel and Petitioner regarding their differences, and he was persuaded that there was no significant conflict or other reason to appoint new counsel in place of Mr. Zaccaria.  For reasons similar to those given with respect to the Strickland claim, the undersigned recommends that this claim also be denied.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the

applicant.  A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9th day of July, 2015.

Mark L. Hornsby
U.S. Magistrate Judge